IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DERIRICK DEWAYNE MEDLOCK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:04CV838-WKW |
| ) | (WO) |
| JIM BISHOP CABINETS, INC., ) | |
| ) | |
| Defendant. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff Deririck Medlock, who now proceeds *pro se*,[1] brings this action against defendant Jim Bishop Cabinets, Inc., alleging that defendant discriminated against him on the basis of his race in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 when it selected Chris Pippin instead of plaintiff for a supervisory position (Complaint, ¶¶ 16-20, 33-38, 42-47), and that it terminated his employment in retaliation for complaining of race discrimination in violation of Title VII (Complaint, ¶¶ 21-28, 51-54).[2] This action is presently before the court on the motion for summary judgment filed by defendant on

---

[1] Plaintiff was originally represented by counsel. The case was referred to the undersigned Magistrate Judge in August 2005, after plaintiff's counsel was permitted to withdraw from representation. (Doc. ## 17, 19).

[2] In his deposition, plaintiff testified that he was paid less than he should have been according to the applicable wage scale. Plaintiff included this allegation in his EEOC charge. However, plaintiff's complaint – which was filed by his attorneys – asserts no disparate pay claim. Since the claim is not alleged in the complaint, the court does not address it. See Brown v. Snow, ___ F.3d ___, 2006 WL 431721, *7 (11th Cir. Feb. 24, 2006)(holding that a claim was not properly before the court where it was not included in the complaint, and stating that "the discussion of a potential claim in a deposition does not satisfy the requirement of Rule 8(a)").

September 2, 2005 (Doc. # 21).[3]  Although he was given an opportunity to do so, plaintiff has not responded to the motion for summary judgment.  (See Doc. # 25).  Upon consideration of the motion, the court concludes that it is due to be granted.

## BACKGROUND[4]

Plaintiff Deririck Medlock was hired by defendant Jim Bishop Cabinets, Inc., in March 2002.  On his application for employment, plaintiff listed his previous employment experience as a stocker and as a bagger for Express Personal Service (temporary positions held for a total of five months) and as a "glazer" for Honey Baked Ham (a seasonal position held for almost seven weeks).  Plaintiff went to vocational school during the day and was hired by defendant to work in the finishing department on the night shift.  Plaintiff first worked in the "topcoat booth," where he was required to spray wood with either a low sheen or high sheen finish.  After a brief period in that position, plaintiff moved to the position of "line unloader," in which he was required to unload the finished material and put it in its proper place.  He then moved to the "first sealer booth" and, subsequently, to the "second sealer booth."  In these positions, plaintiff sprayed sealer on the wood.

Plaintiff later asked to be moved to the position of "pump room operator," which involved a significant increase in responsibility.  The pump room operator is required to

---

[3] Defendant filed an "amended motion for summary judgment" on September 6, 2005 (Doc. # 23).  Defendant did not alter its brief or file additional evidence with this amended motion, but merely clarified its description of three of the attached exhibits.

[4] As it is required to do, the court has viewed the evidence presented on the motion for summary judgment in the light most favorable to the plaintiff.  Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992).

ensure that the "gun" is spraying correctly, the stain is the right color, and the sealer contains the correct amount of acetone. Plaintiff described the pump room as the "brain of the finish department," and the position of pump room operator as "the next position to like the leadman or the supervisor." Right after his transfer to the pump room, plaintiff asked the night shift manager, Eddie Sawyer, what his next step would be after the pump room. Sawyer responded that it would be the "leadman" position. After ninety days in the pump room, plaintiff received a raise of fifty cents per hour. Plaintiff believed that the raise was insufficient, and had heard "by word of mouth" that his predecessor in the pump room – a white employee – had received a one dollar raise after ninety days. Plaintiff complained to Sawyer, and asked why he received only fifty cents when people before him had received a one dollar raise. Plaintiff told Sawyer that the pump room was "a lot of work . . . for fifty cents." Plaintiff remained in the position for some period of time, but then told Sawyer that "for fifty cents and all of the work and everything, . . . it just wasn't worth it." Sawyer allowed plaintiff to move out of the pump room position and to become a "floater," performing different jobs in the department.

In late August 2003, plaintiff spoke with Sawyer about the vacant position of night shift "leadman" in the finishing department. Sawyer told plaintiff that Chris Pippin – who had begun working for defendant a couple of days previously as a trainee in the pump room – had been hired specifically for the leadman position. After he learned that he would not get the vacant leadman position, plaintiff spoke with Jim Adams – the supervisor of the mill department – and requested a position in the mill department. In September 2003, plaintiff

3

was transferred to the mill department, working alternately on the "dado machine" and the "edgebander."

In January 2004, Chris Pippen was terminated for having excessive absences due to a family issue.  At that time, defendant's attendance policy did not differentiate between excused and unexcused absences.  It was defendant's common practice to re-hire an employee terminated for accruing too many points under the attendance policy, if the absences were for an understandable reason.  Pippen was rehired shortly after his termination and continued to train in the finish department.  On April 22, 2004, Pippen was promoted to the position of night shift lead person in the finishing department.

On May 18, 2004, plaintiff filed a charge of race discrimination with the Equal Employment Opportunity Commission, alleging that: (1) he was "denied a promotion to the position of finish room leadman; and (2) "[s]ince December 2003, [he was] denied the proper wage rate for different jobs that [he was] required to perform."  On July 1, 2004, defendant terminated plaintiff's employment. (Medlock depo., pp. 32, 37-40, 43, 49-50, 52-53, 55-56, 61-70, 75, 77, 79, 146-147, 149; Defendant's Exhibit E (employment application, Exhibit 2 to Medlock depo.); Bishop, Jr. aff., ¶¶ 6, 11; Kelly aff., ¶¶ 6; Graveman aff., ¶¶ 9, 11; Defendant's Exhibit G (EEOC charge, Defendant's Exhibit 3 to Medlock depo.)).

## THE SUMMARY JUDGMENT STANDARD

A party seeking summary judgment bears the initial burden of demonstrating to the court the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions that it believes show an absence of any genuine

4

issue of material fact. Hairston v. Gainesville Publishing Co., 9 F.3d 913 (11th Cir. 1993). In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Court held that if a party opposing summary judgment "fails to make a showing sufficient to establish the existence of an element essential to their party's case, and on which their party will bear the burden of proof at trial," summary judgment shall be granted.

> [W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial. . . We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56 except the mere pleadings themselves. . . ."

Id. at 324.

For summary judgment purposes, an issue of fact is "material" if it is a legal element of the claim, as identified by the substantive law governing the case, such that its presence or absence might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. Matsushita Electrical Industrial Company v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The court must view the evidence, and all factual inferences properly drawn from the evidence, in the light most favorable to the nonmoving party. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992); Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 (11th Cir. 1987). It is improper for this court to weigh conflicting evidence or make credibility determinations; instead, "the

evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. Where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989) (citation omitted).

## DISCUSSION

### Analytical Framework

The McDonnell Douglas/Burdine[5] framework was established by the Supreme Court for evaluating a Title VII plaintiff's claims of discrimination against an employer where, as here, there is no direct evidence of discrimination.  See  Combs v. Plantation Patterns, 106 F.3d 1519, 1527-28 (11th Cir. 1997).[6] The plaintiff must first make out a *prima facie* case of discrimination. Burdine, 450 U.S. at 252-53; Walker v. Mortham, 158 F.3d 1177, 1183 (11th Cir.1998); Combs, 106 F.3d at 1527-28.  "Establishment of the *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee. If the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case." Id. (quoting Burdine, 450 U.S. at 254); Walker, *supra*.

---

[5] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981).

[6] The analytical framework and proof requirements are the same for plaintiff's §1981 and Title VII claims, so the court does not address them separately. Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir.1998).

6

If the plaintiff establishes a *prima facie* case, the employer has the burden of producing "legitimate, non-discriminatory reasons for the challenged employment action." Combs, 106 F.3d at 1528 (citing McDonnell Douglas, 411 U.S. at 802). "To satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Combs, 106 F.3d at 1528 (quoting Burdine, 450 U.S. at 257). If the employer articulates a legitimate, nondiscriminatory reason for its decision, the mandatory inference of discrimination arising from the *prima facie* case is destroyed. Walker, 158 F.3d at 1184. The plaintiff must then produce evidence "including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." Combs, 106 F.3d at 1528.

### Promotion Claim

With regard to plaintiff's promotion claim, defendant argues that: (1) the claim is barred because plaintiff's EEOC charge was untimely; (2) plaintiff cannot establish a *prima facie* case of discrimination; and (3) plaintiff cannot establish pretext. Because it is apparent that plaintiff has not produced evidence of pretext, the court reaches only the latter argument.

Defendant has filed evidence that the lead person is the second person in charge within the plant during the night shift. Bert Molina, defendant's Vice President of Operations; Dean Graveman, Zone Manager for the finishing department and Assistant Vice President of Operations; and Jim Bishop, Jr., Senior Vice President, agreed that it was

necessary to place someone in the night shift lead person position who had strong supervisory skills and relevant supervisory and management experience and that none of the employees who had been trained in the pump room to determine their potential, including plaintiff, had demonstrated the ability to handle the position. They determined that it was necessary to look outside the company for someone with the relevant managerial experience who could be trained in the workings of the finish department. Jim Bishop Jr. had previously met Chris Pippen at an American FastLube and was impressed with the efficient and courteous way he managed both his staff and his clients. Bishop recommended that the Director of Human Resources, Gerald Kelley, contact Pippen. Kelley did so, and learned that Pippin had several years of experience as a lead person in a manufacturing environment at Hager Hinge. Graveman interviewed Pippen and decided to hire him because of his experience at Hager Hinge and his experience as the manager of the American FastLube. Pippen performed well in the pump room, in handling special projects, and in his cross-training across the finishing department, and was placed in the lead person position in April 2004. (Graveman aff.; Bishop, Jr. aff.; Kelley aff.).

The court has thoroughly reviewed the record and has found no evidence from which a factfinder could conclude that defendant's articulated reason – that Pippen had managerial experience in the manufacturing environment and had performed well during his training period in the finishing department – is pretextual.[7] Since plaintiff has not produced evidence

---

[7] Plaintiff testified that he was a "training coordinator" at Burger King, which he described as "like a leadman position," during his final semester of high school and into the following summer. Even assuming that this testimony demonstrates relevant managerial experience, it is undisputed that

8

demonstrating the existence of a genuine issue of material fact as to pretext, defendant is entitled to summary judgment on this claim.

### Retaliation Claim

To establish a *prima facie* case of retaliation under Title VII, plaintiff must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression. Brown, *supra*, n. 2, 2006 WL 431721 at * 7. Defendant argues that plaintiff cannot establish that some of his complaints were protected activity under Title VII, and that plaintiff cannot establish causation.

In his complaint, plaintiff claims that he complained to two managers – Adams and Sawyer – regarding defendant's "racially biased" conduct and "disparate treatment." (See Complaint, ¶¶ 21-22, 39, 48, 51). However, plaintiff testified, with regard to his complaint to Sawyer about Pippin's selection for the leadman position, that he doesn't remember whether he said anything to Sawyer about race. (Medlock depo., p. 237). As to his complaints about pay, plaintiff testified that he did not mention that he was being paid improperly because of his race. (Id, p. 222). Plaintiff has directed the court to no evidence that he complained to supervisors that he was either denied promotion or paid less because of his race, and the court has found no such evidence. Thus, these complaints are not opposition to "any practice made an unlawful employment practice by [Title VII]" and do

---

plaintiff did not include this supervisory experience on his employment application. (Medlock depo., pp. 21-23, 146-47; Defendant's Exhibit E).

9

not constitute activity protected by Title VII's anti-retaliation provision. See 42 U.S.C. § 2000e-3(a).

The record contains testimony that plaintiff complained to Bert Molina, defendant's Vice President of Operations, that a co-employee said to plaintiff, "This ain't no NAACP . . . ." (Medlock depo., pp. 179-184; Bishop, Jr. aff. ¶ 2). For purposes of this motion, the court assumes that this complaint constitutes protected opposition. Additionally, plaintiff's action in filing an EEOC charge is clearly protected activity.

Defendant argues that plaintiff cannot demonstrate that his termination was causally related to the protected activity. The defendant has introduced evidence that the decision to terminate plaintiff's employment was made solely by Jim Bishop, Sr. (Bishop Sr. aff.). The court has found no evidence sufficient to demonstrate the existence of a genuine issue of material fact regarding the identity of the decisionmaker. Plaintiff cannot establish causation unless he can demonstrate that the decisionmaker was aware of the protected activity. See Brungart v. Bellsouth Telecommunications, Inc., 231 F.3d 791, 799-800 (11th Cir. 2000)("[T]emporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct."). In his affidavit, Jim Bishop, Sr. states:

> At the time that the incident occurred and at the time that I directed that Mr. Medlock be terminated, I did not know Deririck Medlock, did not know of any complaints he made against anyone, and did not know of any problems or issues he had with the company. Further, I did not know that he had filed a charge with the EEOC.

10

(Bishop Sr. aff., ¶ 7).

This denial of knowledge by Jim Bishop, Sr. may, of course, be impeached by circumstantial evidence.  See Lippert v. Community Bank, ___ F.3d ___, 2006 WL 295398, *5 - *6 (11th Cir. Feb. 8, 2006).   However, that circumstantial evidence must be sufficient to permit a reasonable factfinder to conclude that the decisionmaker had actual knowledge of the protected activity.  See id. at *6.  Plaintiff testified that he has never spoken to Jim Bishop, Sr., and that he has made no complaint of race discrimination to Jim Bishop, Sr. (Medlock depo., p. 221).  With regard to Jim Bishop, Sr.'s knowledge of the EEOC charge, plaintiff testified as follows:

> Q.  Do you know if he had any knowledge that you had filed an EEOC charge?
>
> A.  Yes, I do.  I feel as though – yes.
>
> Q.  How do you know he knew about your charge?
>
> A.  I feel as though because that's his business.  He's the executive chief in charge, so I feel as though him and the sons, everybody in the front office, I feel as though they knew.
>
> Q.  Any other evidence you have that he knew about it?
>
> A.  No.

(Medlock depo., pp. 221-22).  Despite Jim Bishop, Sr.'s position as president of the corporate defendant, Jim Bishop, Jr. has primary responsibility for the day-to-day operations of the company. (Bishop Jr. aff., ¶ 2).  The competent evidence of record is not sufficient to permit a factfinder to conclude that Jim Bishop Sr. was actually aware of plaintiff's complaint to

11

Molina or of his EEOC charge.[8]  Further, knowledge of the protected activity cannot be imputed to the corporate defendant for purposes of establishing a *prima facie* case of retaliation simply because other corporate officials or supervisors had knowledge of the activity.  Brungart, *supra*, 231 F.3d at 800.

Plaintiff has not produced evidence sufficient to demonstrate the existence of a genuine issue of material fact on the issue of causation and, thus, has not established a *prima facie* case of retaliation.  Accordingly, defendant is entitled to summary judgment on plaintiff's retaliation claim.

## CONCLUSION

For the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge that defendant's motion for summary judgment (Doc. # 21) be GRANTED, and that this action be DISMISSED with prejudice.

The Clerk of the Court is ORDERED to file the Recommendation of the Magistrate Judge and to serve a copy on the parties to this action.  The parties are DIRECTED to file any objections to this Recommendation on or before **March 15, 2006**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected

---

[8] Bishop Sr. states that he observed plaintiff on the plant floor "screaming, cursing and abusing company equipment," that plaintiff was directing his words and actions toward another employee, Thomas Ellis, and that he walked to the front office and instructed that the "guy on the Dado machine" be terminated immediately.  (Bishop Sr. aff.).  Plaintiff denies the incident. (Medlock depo., pp. 84-85).  While plaintiff's testimony on this point may be evidence of pretext – if the claim were to survive until that stage of the analysis – it does not permit a reasonable inference that Bishop Sr. knew of plaintiff's protected activity or relieve plaintiff of his obligation to establish all of the elements of a *prima facie* case.

to.  Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  Resolution Trust Co. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989).

Done, this 2nd day of March, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE